WILLIAM CARSON and others *vs.* CHARLES S. GETCHELL and another.

June 1, 1877.

**Motions in District Court—What Affidavits may be Read—Continuance to Procure Affidavits.**—On motions in the district court, what affidavits may be read, and in what order, and whether a continuance shall be granted to give a party opportunity to procure further proof, are matters of practice, in the discretion of the court, and this court will not review its action, unless it is evident that the party complaining has not been allowed a reasonable opportunity to be heard.

Appeal by plaintiffs from an order of the district court for Ramsey county, *Simons,* J., presiding, dissolving an attachment.

*Davis, O'Brien & Wilson* and *McCluer & Marsh,* for appellants.

*Morris Lamprey,* for respondents.

GILFILLAN, C. J.[1]  Appeal from an order vacating an attachment.   The writ issued upon the grounds that the defendants, who were partners, "have assigned and disposed of a part of their property, with intent to delay and defraud their creditors, and that they are about to assign and dispose of all of their property, with intent to delay and defraud their creditors;" the grounds being stated in the affidavit in the words of the statute, without any specification of circumstances.   The motion to vacate was made upon affidavits denying the grounds stated in the affidavit on which the writ issued, without specifying any circumstances.   On the hearing, the plaintiffs read affidavits, setting out, in detail, facts and circumstances which, they claim, show the fraudulent intent; and, in rebuttal, the defendants offered affidavits which, they claim, fully explain or avoid the facts and circumstances set out in plaintiffs' affidavits.   The plaintiffs objected to the reading of the

---

[1] Berry, J., being of kin to some of the plaintiffs, did not sit in this case.

defendants' affidavits, without stating any ground of objection, and, after they were read, moved to suppress them, on the ground that affidavits in reply are not competent. This motion was denied, and plaintiffs thereupon asked for a continuance, to enable them to procure affidavits in answer to defendants' rebutting affidavits, and this was denied, and an order made vacating the writ.

What affidavits may be read, and in what order the parties shall put in their proofs, and whether a continuance shall be granted to give a party opportunity to produce further proofs, on motions in the district court, are matters of practice within the sound discretion of that court, and we cannot review its action, unless it is evident that the party complaining has not been allowed a reasonable opportunity to be heard. There are no indications of that in this case.

The answering affidavits of plaintiffs seem to abandon the ground that the defendants are about to assign and dispose of their property, with intent to delay and defraud their creditors. They are directed to the intent accompanying past transactions, and fail to show, by any circumstances, with what intent the defendants are about to assign their property. The purpose to assign is not even shown by the answering affidavits.

The defendants were a partnership, composed of Charles S. and William S. Getchell, as to whose solvency, in September, 1876, there is considerable doubt; but, when they became so, if insolvent, and to what extent they were so at that time, it is difficult, if not impossible, to say from the conflicting character, and indefiniteness as to facts and dates, of the affidavits on both sides.

The specific acts of assigning and disposing of their property, with intent to defraud, charged upon defendants, are that, during the year 1875, Charles S. drew out of the firm funds about $2,000, and used the same in improving and repairing his homestead; that, since the year 1873, he drew about $1,500, and with it paid his individual debts, which

were barred by the statute of limitations, and which had also been settled years before; that William S., during the year 1875, drew from the firm funds about $2,000, and with it built a homestead; that three horses, which defendants had admitted were the property of the firm, were, in September or October, 1876, transferred to the individual partners, and that they are now claimed as exempt; that, during the year 1875, they furnished and provided George Getchell, son of Charles S., $2,000, and with it he constructed a homestead; and that they have disposed of about $75 worth of clothing to parties unknown to plaintiffs; and it is. alleged that no account was kept, in the firm books, of the moneys so withdrawn by the partners, and that the firm was insolvent at the times when said several transactions. took place.

The affidavits of defendants admit that Charles S. Getchell drew, at the time stated, $200, and with it built on his. homestead a small building or addition, to be used as an office for the firm, and that he drew out $1,400, which he used in paying his necessary expenses and just debts; that. William S. drew out $2,000, restored $240 of it, and, with the remainder, built a small house for himself and family; and deny that they furnished George Getchell $2,000 to build a homestead, but admit that he worked for the firm, and that they paid him for his work, like any other laborer; allege that the clothing mentioned in plaintiffs' affidavits. was sold at its full value to employés of the firm, in payment for services; and deny that they ever admitted that. the three horses were the property of the firm, and claim that two of them belonged to Charles S.   They allege that full accounts were kept of moneys drawn out by the partners, and deny the insolvency of the firm at the times specified.

Undoubtedly, the fraudulent withdrawal, by the partners, of firm funds, and investing them in exempt property to be held by the individual partners, so as to place them beyond

the reach of the firm creditors, is such a disposition of the firm's property as will justify the issuance of an attachment against it; but, in this case, the fraudulent intent does not appear so clearly as to justify us in reversing the decision of the court below upon the question of intent. There is nothing in the affidavits, save general allegations on the one hand, and denials on the other, bearing on the solvency or insolvency of the firm at the times when the funds were withdrawn, and there is not enough in the affidavits to enable us to say that the amounts withdrawn, in the absence of satisfactory proof of insolvency at the time, were such as to raise the presumption of fraud. The defendants admit that Charles S. Getchell drew out, in all, $1,600, and no more, and that William S. drew out $2,000, of which he replaced $240. Whether they drew out, for any purposes, any more during the three years covered by the affidavits, does not appear; and, if those sums were all that were drawn out by them during that time, the amounts do not seem exorbitant — certainly for partners who appear, from their affidavits, to have considered their firm solvent.

Order affirmed.